THE STATE, Appellant, v. JAMES T. BRADSHAW
et al.

In Banc, March 15, 1926.

1. **GRAIN INSPECTION**: Fees: Extra Services: Right of State. Where employees of the Warehouse Commissioner received full compensation during the time they were required to work, the State is not entitled to recover fees paid them by warehousemen for extra services rendered on Sundays and after and before regular hours on other days, for the purpose of preventing congestion of the grain trade. By the statute the Commissioner was empowered to fix all charges for the inspection of grain, which were to be regulated in such manner as would, in his judgment, "produce sufficient revenue to meet the necessary expenses of the service of inspection, and no more," and therefore the State is not entitled to any more money·from that source, to be added to the general revenue fund and to be appropriated to other purposes.

2. ————: ————: No Loss of Money: Equity. Where the State sues for money it never lost there is no equity in its case, and to recover it must be held to the strict letter of the law. And while it is true that inspectors of grain are not entitled to extra pay for work done by them in regular hours and in the line of their duties, they are not required to do extra work at irregular hours and on Sundays and other holidays; and where there was an accumulation of carloads of grain at a grain center and to prevent a congestion at such times and to accommodate dealers they did extra work, there is no equity in the State's case seeking to compel the Warehouse Commissioner to pay into the State Treasury the money paid by the dealers to his employees to do said extra work.

3. ————: ————: Remedy: Suit Against Commissioner. If the extra services were rendered by unofficial employees of the Warehouse Commissioner and the inspection fees were paid by the accommodated dealers to such employees, the remedy would be against the Commissioner, not for failure to collect the fees, but for certification without official inspection.

4. ————: ————: Reduction of Charges: Appellate Practice. Under the statute (Sec. 6032, R. S. 1919) the Warehouse Commissioner had a right to regulate the charges for inspecting grain in such manner as in his judgment would produce sufficient revenue to meet the expenses of the service, and if the expenses were met the State is not concerned with how low they were. He was not required to make

State v. Bradshaw.

uniform charges; he could make a reduction for inspection at odd hours and on Sundays; and if there was a reduction of charges by the Commissioner, every favorable inference will on appeal be drawn from the finding of the trial court that the State is not entitled to recover from the Commissioner fees "at the usual rate" alleged to have been paid for the extra work.

5. ——: ——: **Collection.** The statute does not require the Warehouse Commissioner to collect inspection fees for extra services performed by his employees at irregular hours. And before the State can recover upon the theory that he failed to collect fees, it must point out the rule that made it his duty to collect.

6. ——: ——: **Unofficial Services.** There being no law requiring the Warehouse Commissioner to weigh and inspect grain in towns having less than 75,000 inhabitants, the State cannot recover fees paid to him for unofficial services rendered warehousemen in such towns.

Inspection, 32 C. J., Section 10, p. 936, n. 14. **States**, 36 Cyc., p. 887, n. 56; p. 889, n. 85; p. 894, n. 32.

Appeal from Cole Circuit Court.—*Hon. John G. Slate,* Judge.

AFFIRMED.

*Jesse W. Barrett,* Attorney-General, and *Henry Davis,* Assistant Attorney-General, for appellant.

(1)  It was the duty of the Warehouse Commissioner personally and by and through his employees to collect fees for the official services performed by them and to pay such fees into the State Treasury. ·Secs. 6029, 6032, 6049, R. S. 1919; State ex rel. v. Gordon, 266 Mo. 415.   (2) The Commissioner had complete authority to enforce the collection of all fees for the services rendered by his department, and it was his duty to make said collections. Secs. 6011, 6012, 6032, 6050, 6053, R. S. 1919; State ex rel. Bybee v. Hackmann, 276 Mo. 116; State ex rel. Bradshaw v. Hackmann, 276 Mo. 607; 29 Cyc. 1447.   (3)  An officer

is not entitled to a fee for services unless the statute authorizes it. He is not entitled to extra compensation for extra services. State v. Holliday, 67 Mo. 64; Gammon v. Lafayette County, 76 Mo. 575; Williams v. Chariton County, 85 Mo. 645; State ex rel. Stewart v. Wofford, 116 Mo. 220; People v. Devlin, 33 N. Y. 269; Miami v. Blake, 21 Ind. 32; Robinson v. Dunn, 77 Cal. 473; Mangam v. Brooklyn, 98 N. Y. 585; Spokane County v. Allen, 9 Wash. 229; Johnson v. Black, 103 Va. 477. (4) Public officers are responsible for the misfeasances of their subordinates where they direct or authorize the wrong or cooperate in it. Ely v. Powers, 55 Conn. 83; Tracy v. Cloyd, 10 W. Va. 19; Wiggins v. Hathaway, 6 Barb. (N. Y.) 632; Robertson v. Sichel, 127 U. S. 507; Throop on Public Officers, sec. 592. (5) A public officer is liable to the public corporation under which he holds his office for his failure to collect the statutory fees for his services. Lincoln County v. Land Co., 23 Idaho, 433; Demers v. Cloud County, 5 Kan. App. 271; State v. Hazelet, 41 Neb. 257; State v. Scott, 41 Neb. 263; Lucas v. Clafflin, 76 Va. 269; Ely v. Parsons, 55 Conn. 100; Anne Arundel County v. Duvall, 54 Md. 350; Bassett v. Fish, 75 N. Y. 303; Shepherd v. Lincoln, 17 Wend. (N. Y.) 250; Sawyer v. Corse, 17 Gratt (Va.) 230; Mullett's Admrx. v. United States, 150 U. S. 572; Woodwell v. United States, 214 U. S. 82. (6) The failure of an officer to pay into the treasury of the public corporation under which he holds all fees collected by him by reason of his official position is a breach of his official bond for which he and his sureties are liable. He is estopped to deny the legality of his act in collecting the fees. Mississippi County v. Jackson, 51 Mo. 23; State to use v. Hickman, 84 Mo. 80-81; State ex rel. v. Ewing, 116 Mo. 129; Skagit County v. Am. Bonding Co., 59 Wash. 8; People v. Van Ness, 79 Cal. 89; Leach v. Ry. Co., 86 Mo. 31.

*John I. Williamson* for respondents.

(1)   In deciding his course of conduct with reference to the sum of $1796.55, the Commissioner was acting in a *quasi*-judicial capacity, and is not liable for his acts unless done wilfully, corruptly and maliciously. Pike v. McGoun, 44 Mo. 496; Mechen on Public Officers (3 Ed.) p. 421, sec. 638.   (2)   The sum of $1796.55 here involved merely amounts, under the State's own contention, to a reduction of rates to that extent, and this reduction the Commissioner was authorized by statue to make.   State v. Gordon, 266 Mo. 394; McNulty v. Ellison, 278 Mo. 42.   (3)   There is a total failure of proof as to the State's claim for $1796.55.   Bobb v. Talbot Theatre Co., 221 S. W. 374.   (4)   The statute creating the office of Warehouse Commissioner does not impose upon the duty of collecting the fees earned by that department. Secs. 6011, 6032, R. S. 1919.   (5)   Even on the State's own theory, it is not entitled to recover any part of the $1796.-55 in suit.   Sec. 5996, R. S. 1919; State v. Gordon, 266 Mo. 394; Cornwell v. St. Louis Transit Co., 100 Mo. App. 262; Smith v. Vernon County, 188 Mo. 501; Davis v. Millsap, 159 Mo. App. 167.   (6)   The State has no claim to the private inspection funds.   Mayor of Niles v. Muzzy, 33 Mich. 61; Evans v. City of Trenton, 24 N. J. L. 768; United States v. Brindle, 110 U. S. 688; Converse v. United States, 21 How. 463; City of Detroit v. Redfield, 19 Mich. 383; Mechem on Public Officers, sec. 375, p. 248; State v. Holm, 70 Nebr. 607; Skagit v. Am. Bonding Co., 59 Wash. 8; People v. Van Ness, 79 Cal. 84; Colonial Trust Co. v. McMillan, 188 Mo. 567; State ex rel. Nolen v. Hackmann, 276 Mo. 173.

WHITE, J.—This case was first heard in Division One of this court, where the opinion written was not concurred in by a majority of that division, and the case was transferred to Court in Banc. On a rehearing there the divisional opinion was adopted. Afterwards, a motion for rehearing was sustained, the case reheard and reassigned to me.

313 Mo. Sup.—22.

This suit was filed in the Circuit Court of Cole County in October, 1921, by the Attorney-General, whereby he sought to recover from James T. Bradshaw, Warehouse Commissioner, and the other defendants, sureties on his official bond, certain sums earned by Bradshaw and his inspectors, deputies and helpers, due the State, and which, it is alleged, he failed to collect. Also certain sums which, it is charged, Bradshaw collected and failed to pay into the Treasury of the State. The total amount for which judgment was asked was $13,933.27. A trial was had in the circuit court, where judgment was rendered for the defendant, and the plaintiff appealed to this court.

The petition sets out that Bradshaw was duly appointed Warehouse Commissioner, and, April 30, 1919, gave his bond, signed by the other defendants, in the sum of $20,000, conditioned that Bradshaw "shall faithfully perform the duties of said office."

It then alleges that said Bradshaw did not faithfully perform the duties of his office; "that he failed to collect fees for official duties performed by himself, his deputies, assistants and helpers, for making public inspections and public weighing and issuing official certificates in the following sums." Then follows a list of twenty-three items with the names of warehousemen and elevator companies from which the amount mentioned in each item is due, the total amount aggregating $1736.55. It is alleged that that money belonged to the State of Missouri; that Bradshaw did not collect it, but allowed the above-named companies to retain said fees and pay them to employees of his department without authority of law.

This is followed by allegations at length regarding items of fees collected by Bradshaw, which it is alleged he failed to pay to the Treasury of the State of Missouri. These aggregate the remainder of the amount sued for.

The case was tried and the following stipulation was entered into regarding the facts. There was no other evidence.

State v. Bradshaw.

"In order to avoid the necessity of the introduction of evidence in the above-entitled cause and in order to reach a more speedy determination of the same, it is hereby stipulated and agreed that this cause may be submitted to the court for decision solely upon the pleadings and the following agreed statement of facts.

"(a)   With reference to the following items set forth in the amended petition:

| | | |
|---|---:|---:|
| "Kansas-Mo. Elevator Co., Aug., 1919 | $109.46 | |
| "Milwaukee Elevator Co., Aug., 1919 | 171.30 | |
| "Murray Elevator Co., Aug., 1919 | 143.85 | |
| "Wabash Elevator Co., Aug., 1919 | 69.05 | |
| "Norris Elevator Co., Aug., 1919 | 22.50 | $ 575.80 |
| | | |
| "Kansas-Mo. Elevator Co., Sept., 1919 | $127.50 | |
| "Milwaukee Elevator Co., Sept., 1919 | 56.10 | |
| "K. C. S. Elevator Co., Sept., 1919 | 76.20 | |
| "Murray Elevator Co., Sept., 1919 | 57.60 | 317.40 |
| | | |
| "Kansas-Mo. Elevator Co., Oct., 1919 | $ 98.80 | |
| "Milwaukee Elevator Co., Oct., 1919 | 35.70 | |
| "K. C. S. Elevator Co., Oct., 1919 | 18.00 | 152.50 |
| | | |
| "Kansas-Mo. Elevator Co., Nov., 1919 | $ 41.60 | 41.60 |
| | | |
| "Kansas-Mo. Elevator Co., Dec., 1919 | $ 31.20 | |
| "Milwaukee Elevator Co., Dec., 1919 | 3.60 | 34.80 |

| | | |
|---|---:|---:|
| "Kansas-Mo. Elevator Co., Jan., 1920 | $ 57.20 | |
| "Milwaukee Elevator Co., Jan., 1920 | 2.40 | 59.60 |
| | | |
| "Kansas-Mo. Elevator Co., Feb., 1920 | $ 46.80 | 46.80 |
| | | |
| "Kansas-Mo. Elevator Co., Mar., 1920 | $ 41.20 | 41.20 |
| | | |
| "Kansas-Mo. Elevator Co., Apr., 1920 | $ 20.80 | |
| "Milwaukee Elevator Co., Apr., 1920 | 7.65 | 28.45 |
| | | |
| "St. Louis, Mo., Aug., 1919 | $330.60 | |
| "St. Louis, Mo., Sept., 1919 | 167.80 | 498.40 |
| | | $1,736.55 |

"It is agreed that said amount of $1736.55 was retained by public warehousemen for services rendered by employees of the Warehouse Department at public warehouses on Sundays, legal holidays and for services rendered on other days outside of and beyond eight or ten hours' work on such days; that said amount so retained was kept by the different public warehousemen and paid to the employees of the Warehouse Department for such services; that the same was never paid to defendant Bradshaw nor into the State Treasury, and that for periods during which said employees of the Warehouse Department received sums aggregating $1736.55 from said public warehousemen, the same employees were paid out of the State Treasury the full amounts to which they were entitled under the law as employees of the Warehouse Department; that such services were desired by said public warehousemen in order to avoid a congestion in the handling of grain, and that defendant Bradshaw con-

sented that the public warehousemen might pay for such services in the manner in this paragraph set forth; that the usual fee of one dollar per car for each car inspected or weighed was charged to such public warehousemen and billed to them at the end of each month and that such warehousemen then deducted from the total bill the amounts paid by them for such services and paid the remainder to the State, the total amount of said deductions being $1736.55.

"(b)   All other sums mentioned in said amended petition were received into or paid out of a fund arising from certain services rendered certain private warehousemen who were not entitled to the services of the Warehouse Department under the law, and for which service no provision was then made by law. The services so rendered to private warehousemen were rendered in part by employees of the Warehouse Department and in part by other persons, all under the supervision of the defendant James T. Bradshaw. If the court should hold that the State is entitled to recover any portion of the amount referred to in this subsection, then the State shall be afforded the opportunity of introducing evidence to determine the exact amount of its recovery.

"It is further agreed that the defendant Bradshaw issued certificates of weights and inspections for such private service substantially in the form of the certificate hereto attached and marked Exhibit 'Certificate:'

"IN WEIGHT **TRANSFER** *CERTIFICATE.*
"GRAIN WEIGHING DEPARTMENT
"STATE OF MISSOURI

(State Seal)
        "Jas. T. Bradshaw
        "State Warehouse Commissioner
        "333-34-35-36 Board of Trade Bldg.,
        "Kansas City, Mo.
    "Bell Phone, 3292 Main.
    "Home Phone, 3420 Harrison.
    ''**STATE** WEIGHING FEE, $3.00       Kansas City, Mo. — 192—

State v. Bradshaw.

"Initials, M. P.; Car No. 40130; Initials, Car No.
"*Weighed at* Acme Elevator; contents, Wheat; State Weight,
"Pounds, 60,000; Remarks.

"Above Weight certified to be Correct.
"Weighed in **Hopper** *on Track* Scale.

"JNO. JONES,
"Missouri State Weigher."

The bold face words appear in the printed forms used, and the words in italics are written in long hand.

These facts appearing in the stipulation are amplified and explained somewhat in the printed arguments of counsel on both sides. The claim against the defendant naturally divides itself into two parts; the first amounts to $1736.55, comprising the items which it is said Bradshaw failed to collect; the second relates to charges it is claimed he collected and failed to turn in. The principal controversy turns upon the first part mentioned.

It will be seen that this $1736.55 was paid to the employees of Bradshaw's office for work which they did by putting in extra working hours. They received their full salaries, or whatever their compensation was, for all they did during the time they were *required* to work, but, owing to the congested condition of the grain trade at a certain period, they voluntarily worked on Sundays and at irregular hours, for the purpose of disposing of the accumulation of grain with some dealers, and compensation for such service was paid them by the dealers for whom they performed such service. The money did not go to Bradshaw, but went to his assistants for extra work. It is contended by the State that the inspector, deputies and other assistants of the Warehouse Commissioner were State officials, received fixed compensation for their work, and could not exact additional pay for any extra work they might do.

I. It is important to ascertain the legislative scheme with relation to this department. The Warehouse Commissioner had a salary fixed by statute; he appointed a

State v. Bradshaw.

chief inspector, a deputy chief inspector and assistant inspectors, fixed their compensation within maximum salaries provided by statute, and prescribed rules and regulations which governed the business of inspection and other matters pertaining to his office. He was empowered to fix all the charges for the inspection of grain, and other duties. Section 6032, Revised Statutes 1919, relating to that matter, concludes as follows:

*Extra Fees: Right of State.*

". . . which charges shall be regulated in such manner as will, in the judgment of the Commissioner produce sufficient revenue to meet the necessary expenses of the service of inspection *and no more. All fees collected shall be paid monthly into the State Treasury* and become a part of the general revenue fund of the State, the earnings of each month to be paid into the said treasury on or before the 20th day of the month following the one during which such fees were earned."

The Commissioner is required to regulate the rates so as to meet the necessary expenses of the service and "*no more.*" That expression was construed by this court in the case of State ex rel. v. Gordon, 266 Mo. l. c. 415, where it was held that the department was not intended to earn any profit, but merely to pay its way. The State of Missouri was not entitled to obtain any revenue for other purposes from any of the fees paid in for the work done by the Warehouse Commissioner and his assistants.

The purpose of having the fees collected and paid into the State Treasury is apparent. Section 43, Article IV, of the Constitution, requires that all revenues collected and "*moneys received by the State from any source whatsoever*" shall go into the Treasury and must be paid out on appropriations by the General Assembly. When the charges for inspecting grain are paid to the commissioner, the inspector, his deputy or assistants, they must be paid, of course, to the State of Missouri. The money must go into the State Treasury. This is done so that the proper authorities may keep a check upon all

the operations of every department of State. To allow a department of State, which is self-supporting from charges paid for services rendered, to have charge of the money received without accounting to the State in any way, would probably lead to abuses. The requirement that all money shall go into the State Treasury, with statements accounting for how it was received, would prevent exorbitant charges, which might weigh down the grain trade with undue burdens. From the fact that the money was to be paid into the State Treasury and go into the general revenue fund, it does not follow that the State should have any money from that source to appropriate for other purposes; the amount received from that department should be exactly, or approximately, balanced against the expense of the department.

From this it necessarily follows that the State is suing for money which, if successful, it could appropriate entirely for other general purposes and to which it is not entitled for those purposes—money which Bradshaw never received and which the State never lost.

II.   The State did not lose the money sued for on this count. It is true the inspector, his deputy, etc., were obliged to perform all the duties incident to their offices for the compensation or salaries fixed by the Warehouse Commissioner, and were not entitled to extra pay for extra work done in the line of duties. But they were not obliged to do that extra work. They were obliged to work during the regulation working hours each day. It is only judges of the Supreme Court who work overtime and on Sunday without extra pay.

No Loss:
Extra
Work.

There was an accumulation of carloads of grain coming into Kansas City, much more than could be handled by the force of the Commissioner and inspector. The grain dealers were clamorous for speedy inspection of their wares. The inspector and his deputies were only obliged to do what they could do during the working

hours of each day. By working on Sunday and extra hours they relieved the congestion and were compensated for that extra work by the dealers. Now if Bradshaw had been able to appoint or employ additional assistants, who could have performed all that work in the regular working hours, he would have fixed their compensation at what these men did receive, and the State of Missouri would have no claim. The result would have been exactly the same; the same service would have been rendered during the same period and the same compensation paid. The only difference is, the service would have been rendered by additional employees instead of the employees who did render it. Or, if the time in which the employees were obliged to do that work had been extended so that they could have done it all in the regular working hours, they would have spent the same time upon it and earned the same fees for it and received the same compensation which they did, and the State would have had no basis for a claim.

It is quite apparent that the employees who performed that extra work would not have done it without the extra pay. But for the promise of extra pay some other shift would have been necessary, either the appointment of additional employees, or the grain shipped to some other point where the inspection law did not apply. In either event the State of Missouri would have been in the same condition as it is, without any basis for the claim it presents here. The State sues Bradshaw for money which it never lost, relying solely upon the technical situation created by the employees of the Warehouse Commissioner working overtime.

The lack of equity in the State's case, therefore, makes it important to determine whether in fact it made out a case on the technical ground alleged. It must be held to the strict letter of the law which it invokes.

III. The charge in the amended petition is that Bradshaw *failed to collect* fees for official duties per-

formed by himself and his deputies. The original petition proceeded upon a different theory. It alleged that the fees were *collected* and paid to the employees of the Commissioner's office without authority. The amended petition says that these services were rendered by the *Commissioner, his deputies, assistants* and helpers. The appellant argues that all those persons are officials, subordinates of Bradshaw, but State officials nevertheless. Then whatever was paid to them *was collected.* In the stipulation those persons are designated merely as "employees" of the Warehouse Department. Whether this is an attempt to evade the effect of the payment to persons authorized to collect, we do not know.

The State is forced to these alternatives, either the services were rendered by officials such as the chief inspector, his deputy and assistants, the charges paid to them, and therefore collected, or else the services were rendered by unofficial employees who rendered no official service.

In the former case the plaintiff's recourse was upon the chief inspector or the official who made the collection, not for failure to collect, but for failure to pay over the amount collected. The chief, his deputy and assistants were all bonded officers. [Sec. 6031, R. S. 1919.] Section 6032 required *all fees collected* to be paid into the State Treasury, not necessarily by the Commissioner, but by any officer who collects them.

If the services were rendered by unofficial employees, the remedy would be against Bradshaw, not for failure to collect, but for certification without official inspection.

IV. As an excuse for the Sunday work the State's counsel asserts that the "ox was in the ditch." So it was, with no way of extricating it, because the Commissioner could not force his inspector, deputy or assistants, to perform extra work. The chief inspector had a definite term of four years. The "employees" who did this extra work did it because they were paid for it. The stipulation has this statement:

"That the usual fee of one dollar per car for each car inspected or weighed was charged to *such* public warehousemen and billed to them at the end of each month and that such warehousemen then deducted from the total bill the amounts paid by them for such service."

It is further stipulated that Bradshaw consented that the warehousemen might pay for such services.

Suppose Bradshaw had said to the warehousemen, "This is a crisis. There is a sudden flood of grain shipped in here, and there is no way in which the force at my command can handle it. But if you will satisfy me in some way that the grain which you desire me to certify to comes up to the standards which you claim for it, then I will certify it without charging you the full price for inspection. I will deduct such expense as you may incur in furnishing me the satisfactory evidence." *That in effect was what was done. He reduced the charges.* He billed to the warehousemen the usual fee of one dollar per car. The list of items which they deducted in remitting the balance to the State shows they could not have deducted the full price of one dollar per car. There is nothing in the record anywhere to show how many cars were included in this irregular inspection and nothing to show definitely what services the deductions represented.

The stipulation indicates that the bills rendered for the irregular inspection were the bills from which the deductions were made, for it was "*such*" warehousemen, those for whom the extra work was done. The charge was one dollar per car in round numbers. The twenty-three items deducted, except in one instance, are each in dollars *and cents*. The trial court reasonably could infer that the deduction was only a part of the full charge. That the warehousemen paid the *employees* of the department for furnishing the evidence which they could show to the Warehouse Commissioner, makes no difference. The Commissioner, by his experience and knowledge of the business, might have found the grain was inspected in another state from which it was shipped; or, he might

have had other reasons for believing he could properly certify to it. Then, what does his consent to the arrangement amount to? To this: he reduced the charge for inspection to certain warehousemen by the amount which they expended in satisfying him of the quality of their grain. Under Section 6032 the Commissioner had a right to regulate the charges as in his judgment would produce sufficient revenue to meet the expenses of the service. If the expenses of the service were met, the State is not concerned as to how low his charges were. He was not required to make uniform charges. He could vary them with the circumstances according to the expenses *he* incurred.

The arrangement was a reduction of the charges for the grain inspected at odd hours and on Sundays and not a remission of the full charge. In view of the finding for defendant by the trial court, we must draw every favorable inference from the facts in support of the finding. If it was necessary for the trial court to find that the Commissioner reduced the charges to such warehousemen, in support of the judgment we must assume that such was his finding. [Smith v. Railroad, 279 Mo. 1. c. 187.] In that case the State has no right to complain. The trial court might have found the facts otherwise, but did not.

V.    But taking this case on the plaintiff's theory that Bradshaw failed to collect. Was it his duty to make those collections? His duty is defined by the statute and his bondsmen are bound by the performance of that duty. There is no language anywhere in the statute which makes it necessary for him to collect the particular fees constituting this charge. Section 6032, Revised Statutes 1919, provides that the Commissioner shall have full power to make all proper rules and regulations for the inspection of grain, including the fixing of charges for the inspection of grain and other duties of said chief inspector, etc., and *"to make rules for the collection of same."* It is argued that because that section further provides that

all fees collected shall be paid monthly, it is implied that he must collect them. That does not necessarily follow. There is nothing to indicate whether the fees are usually collected by him or by the inspector or deputy inspector or assistants. They must be paid monthly *if collected.* He is required to make rules for the collection and such rules may place that duty upon the chief inspector or any of his deputies. No rule or custom in regard to such collection was shown.

The chief inspector's duty is to inspect and have general supervision of the inspection of grain under the immediate direction of the Commissioner. Section 5996 provides that the Commissioner shall fix the compensation of the chief inspector, his deputy, assistants, clerks, stenographers and other persons employed, and provides a maximum salary for each one. Section 6029 provides for the appointment of deputy inspectors and assistant inspectors in a requisite number. Section 6030 provides that the chief inspector shall take the oath of office and give a bond to the State of Missouri in the sum of $20,000, the same as the Commissioner's bond. Section 6031 provides that the deputy inspector and assistant inspector shall each take the same oath and give a bond in the sum of $10,000. No one in the department apparently could know more about the working of the department than the chief inspector. No one was likely to know as much about the particular work done and the fees charged and collected. It was perfectly competent for the Commissioner to provide a rule by which the chief inspector or his deputy or one of his assistants should collect the fees. Appellant advances the theory that Section 6011, Revised Statutes 1919, has language which implies that the Commissioner shall collect the fees, because, it is said, he may withhold giving the receipts until the fees are paid. That section contains no such provision. It provides for the giving of receipts by warehousemen and elevatormen for grain which they have received in the warehouse. It implies that the grain is inspected before it can be received

in a warehouse, and the warehouseman is the one who delivers a receipt to the *chief inspector* for such grain and a receipt to the consignee or owner. If there is anything in the implication urged by appellant on that point, then it is the inspector who is to collect the fees and not the Commissioner.

But the rule may have been the fees were paid directly to the State. This proposition is said to be untenable, but the stipulation upon which the case was tried says that is exactly what was done. The extract quoted above is "that the usual fee of one dollar per car for each car inspected or weighed was charged to such public warehousemen and billed to them at the end of each month, and that such warehousemen then deducted from the total bill the amounts paid by them for such services and *paid the remainder to the State*," not to Bradshaw.

Before the State can recover for his failure to collect, they must point to the rule which makes it the Commissioner's duty to collect. Other sections of the law relating to the matter under consideration provide many duties for the Commissioner. He is superintendent in a general way of the activities in the department. Nothing is more natural that he should provide some way of payment or collection of the charges than to collect them himself. Of course, the ultimate responsibility for the collection was with Bradshaw. But inasmuch as his subordinate officers are under bond the same as he is, he would not necessarily be responsible for their failure to perform some duty which he imposed upon them by his regulation.

The trial court found for the defendant and in doing so, of course found that the State failed to make out a case. There is a failure of evidence to show any regulation or rule which made it incumbent upon the Commissioner to make the collection. There was no evidence that the charges sued for were not collected. The evidence shows with sufficient clearness that Bradshaw reduced the charges to certain warehousemen, which he had a

right to do. How much the reduction was, was not shown. It may have been a small per cent of the full charge.

We must presume that the trial court in finding for him, found any one or more of these facts in support of the judgment.

VI. The balance of plaintiff's claim, about $12,000, is for fees earned and collected by the Commissioner unofficially. ''There was no law requiring the respondent Commissioner to inspect and weigh grains and hay of warehousemen except at warehouses in cities containing a population of 75,000 or more inhabitants.'' ''No official weighing and inspections had to be made in places containing a population of less than 75,000.'' These quotations are taken from appellant's brief.

The stipulation says that such services were ''rendered certain private warehousemen, who were not entitled to the services of the Warehouse Department under the law, and for which service no provision was then made by law. The services so rendered to private warehousemen were rendered in part by employees of the Warehouse Department and in part by other persons, all under the supervision of the defendant, James T. Bradshaw.''

Warehousemen in cities of less than 75,000 inhabitants wanted the benefits of authoritative inspection, for which the law made no provision. Therefore they were willing to pay Bradshaw for inspecting and weighing their grain and hay. This he did, making the usual charges, changing his official blanks so as to show the certifications were unofficial, as the stipulation above shows.

Appellant has advanced no reason why the State has any claim on the fees earned for this service, but virtually admits there is no liability on that account.

The judgment is affirmed. *Blair, C. J.,* and *Graves, J.,* concur; *Walker* and *Ragland, JJ.,* concur in the result. *Atwood, J.,* dissents; *Otto, J.,* not sitting.